**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:06cv60**

| | |
|---|---|
| MERRIMON BURWELL OXLEY and ) <br> JAMES OXLEY, d/b/a MEADOWBROOK ) <br> NURSERY AND FARM and d/b/a WE-DU ) <br> NATIVES, ) <br> ) <br> Plaintiffs, ) <br> ) <br> Vs. ) <br> ) <br> ASPLUNDH TREE EXPERT CO.; and ) <br> CSX TRANSPORTATION, INC., ) <br> ) <br> Defendants. ) <br> _____ ) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the court on defendant CSX Transportation, Inc.'s (hereinafter "CSX") Motion to Dismiss (#12). On April 17, 2006, plaintiffs filed their response to CSX's motion, making CSX's reply or written notification that it did not intend to reply due not later than April 27, 2006. See L.R. 7.1(B). CSX filed a reply on May 1, 2006. Despite being filed late, such reply has been considered by the court.

CSX has moved in accordance with Rule 12(b)(6), Federal Rules of Civil Procedure, to dismiss plaintiffs' Ninth Cause of Action for Unfair and Deceptive Trade Practices (hereinafter "UDTP" or "UDPTA"), arguing that plaintiffs have failed to state a claim as a matter of North Carolina law. It appearing that briefing has closed, such motion is now ripe for consideration and disposition.

**FINDINGS AND CONCLUSIONS**

**I.     Background**

The following factual allegations have been drawn from the Complaint and are

-1-

deemed true for the limited purpose of the pending motion.

Plaintiffs are engaged in the nursery business, growing rare native plants for sale to the public. Complaint, at ¶ 8. Plaintiff contends that it grows a number of plants from root stock or mother plants, and that it relies on water drawn from a spring box on their property in growing such plants. Complaint, at ¶ 15.

CSX is engaged in the business of rail transport and owns an easement that either borders or goes through plaintiffs' property. Such easement was granted to CSX or its predecessors in interest by plaintiffs' predecessors in title. Complaint, at ¶ 12.

At issue is alleged contamination of plaintiffs' land, spring, and plants through CSX's purportedly unlawful use of herbicides. Apparently, CSX uses herbicides as a defoliant in maintaining the right-of-way for their tracks.

Plaintiffs allege that in 1993, CSX hired a contractor to spray herbicides, including "Tordon K" (also known as Picloram) along its right-of-way, which contaminated the spring box used by the previous owners of the property. Complaint, at ¶¶ 19-21. Plaintiffs allege that the State of North Carolina, thereafter, filed a complaint against CSX's contractor for violating North Carolina laws governing use of pesticides. Id., at ¶ 22. As a result of such action, a settlement agreement was purportedly reached between the state and the contractor, whereby such contractor (alleged to be an agent of CSX) agreed to use only certain herbicide formulations, which did not include Picloram or Imazapyr "along the railroad and one-half mile in both directions from the We-Du Nursery spring box." Id., at ¶ 23.

Plaintiffs contend that in such settlement agreement, CSX represented to the state through its agent that it would not spray such chemicals near the plaintiffs' land. Id.; Plaintiffs' Brief, at 9. Plaintiffs further allege that such agent agreed to erect signs on both sides of the railroad and one-half mile in both directions from the nursery spring box to

inform all of the herbicide spray schedule. Complaint, at ¶ 24.

Plaintiffs further allege that while CSX was informed of the restrictions imposed by the agreement, they did nothing in furtherance of such agreement and took no action to ensure that the allegedly illegal spraying would not be repeated. Id., at ¶¶ 25-27. Plaintiffs allege that CSX repeated the illegal spraying in 2004, injuring the plaintiffs by killing their plants and root stock, contaminating their land, and poisoning their spring box. Id., at ¶¶ 28-38.

## II.     Standard Applicable to Rule 12(b)(6) Motions

Where a defendant contends that a plaintiff has failed to state a cognizable claim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

Id., at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the plaintiffs' complaint could support the asserted claim for relief. Taubman Realty Group LLP v. Mineta, 320 F. 3d 475, 479 (4th Cir. 2003); Migdal v. Rowe Price-Fleming Intl Inc., 248 F. 3d 321, 325-36 (4th Cir. 2001).

While the court accepts factual allegations in the complaint as true and considers the facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern

Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

> The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis.

Migdal, supra, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). For the limited purpose of ruling on defendant's motion, the court has accepted as true the facts alleged by plaintiffs in the complaint and has viewed them in a light most favorable to plaintiff.

### III.   Unfair and Deceptive Trade Practices

####   A.   Introduction

A state-law claim for Unfair and Deceptive Trade Practices is governed by Chapter 75-1.1(a) of the North Carolina General Statutes, which provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Id. When such provision was enacted into law in 1969, it contained the following statement of purpose:

> The purpose of this section is to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public within this State to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in this State.

N.C. Gen. Stat. 75-1.1(b). See also Edmisten v. Penney Co., 292 N.C. 311 (1977) In response to a decision of the North Carolina Supreme Court in Edmisten, Section 75-1.1(b) was amended in 1977 to read "[f]or the purposes of this section "commerce" includes all

business activities, however denominated . . . ." Id.

The UDTPA is, without doubt, a scheme regulating conduct between buyers and sellers and between businesses. See Roberson v. Dale, 464 F.Supp. 680 (M.D.N.C. 1979). See also Liggett Group, Inc. v. Sunas, 113 N.C. App. 19, 31 (1993); Buie v. Daniel Int'l, 56 N.C. App. 445, 448, cert. denied, 305 N.C. 759 (1982). To state a cause of action under the UDTPA, plaintiffs must allege the following:

    (1)    conduct constituting an "unfair or deceptive act or practice;"

    (2)    conduct "in or affecting commerce," and

    (3)    that such conduct proximately caused actual injury to plaintiff.

Food Lion, Inc. v. Capital Cities/ABC Inc., 951 F. Supp. 1224, 1230 (M.D.N.C. 1996). The court will review the Complaint as to each element to determine whether a claim has in fact been stated.

    **B.**    **Conduct Actionable Under the UDTPA**

In this case, plaintiffs have alleged that CSX misrepresented to the state, the marketplace, and the plaintiffs that they would not spray Picloram or Imazapyr near the plaintiffs' property. CSX argues that at most plaintiffs have alleged a breach of contract, which is not actionable under the UDTPA.

Generally, even an allegation of an *intentional* breach of contract will not support an action for unfair and deceptive trade practices under the North Carolina statute. United Roasters, Inc. v. Colgate-Palmolive Co., 485 F. Supp. 1049, 1060 (E.D.N.C. 1980), aff'd, 649 F.2d 985 (4th Cir.), cert. denied, 454 U.S. 1054 (1981); Pappas v. NCNB Nat'l Bank, 653 F. Supp. 699 (M.D.N.C. 1987). A UDTPA claim based on a breach of contract will only survive a Rule 12(b)(6) motion if a plaintiff alleges:

> substantial aggravating circumstances attending the breach.... [T]o find such factors one would probably need to demonstrate deception either in the formation of the contract or in the circumstances of its breach.

Bartolomeo v. S. B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989)(citations omitted). In North Carolina, it appears that a UDTPA claim is not dependent on *actual* deception, because "it is not necessary to show that plaintiff was actually deceived but only that the tendency or capacity to mislead exists." Lapierre v. Samco Development Corp., 103 N.C.App. 551, 557-58 (1991). To satisfy the first element, plaintiffs must have alleged "substantial aggravating circumstances" amounting to deception in formation of the contract or in its breach.

The undersigned finds that plaintiffs have made the requisite allegations. Plaintiffs have alleged that in the formation of the settlement agreement, CSX's agent falsely represented to the State of North Carolina that it would not spray Picloram and Imazapyr near what is now the plaintiffs' property and that it would prophylactically erect signs informing future spraying crews not to spray near plaintiffs' property. CSX allegedly did nothing in furtherance of this agreement once it was in place, Complaint, at ¶¶ 25 & 26, and took no action to ensure that such allegedly unlawful spraying would not be repeated. Complaint, at ¶ 27. As to the breach of the agreement, plaintiffs have alleged that in 2004, CSX used the same prohibited chemicals, well-knowing that such use was against North Carolina's Pesticide Law, N.C. Gen. Stat. §§ 143-441, 443 & 456, and had damaged plants on the land now owned by plaintiffs in the past. Complaint, at ¶ 51. Plaintiffs further alleged that by 2005, such unlawful spraying had "injured, killed, damaged or stunted nearly all of the Oxley's nursery inventory" and had "virtually wiped out the 'liners' and many of the mother plants that the Oxleys use to grow new inventory." Complaint, at ¶ 49. Finally, plaintiffs allege that CSX's agent, after assaying the damage in 2005, agreed to "make it right," Complaint, at ¶ 54, but never did provide any help. North Carolina case law provides that promises to remedy damages without the intent to follow through is in itself am

aggravating or egregious circumstance. Unifour Constr. Serv., Inc. v. BellSouth Telecommunications Inc., 163 N.C.App. 657, 666-67, disc. rev. denied, 358 N.C. 550 (2004).

The undersigned finds that plaintiffs have adequately pled facts that if proved could support finding "substantial aggravating circumstances" in both the formation of settlement agreement and its breach. When read with all of the paragraphs of the Complaint, plaintiffs have alleged that CSX not only knowingly breached the contract, but made deceptive representations to plaintiffs (or their predecessors in title) in the formation of the contract. Specifically, plaintiffs have alleged that CSX knew that its spraying was both unlawful and injurious to adjoining lands, but entered into such agreement through its agent with no intent to abide by its terms and then breached the agreement well knowing that such conduct was unlawful and likely to be devastating to the crops and land of plaintiffs. Plaintiffs have, therefore, sufficiently alleged facts as to the first element of a UDTPA claim.

### C.   In and Affecting Trade or Commerce

It appears that plaintiffs have made sufficient allegations that the transaction was "in or affecting trade or commerce." Foremost, plaintiffs have alleged that the transaction between them and CSX is that of a grantor and grantee of an easement (or their successors) and that the transaction concerned maintenance of a railroad right-of-way with an obligation on the grantee of maintaining its easement, supposedly in a manner that is not injurious to the grantor's land. See Complaint, at ¶ 17. The easement provides that CSX "shall not in any event destroy .....said spring or impair the water flowing therefrom." The easement also states that CSX "shall be responsible for such damage as shall be sustained ." As such, the relationship between such parties amounts to a continuing relationship in and affecting trade or commerce.

**D. Proximate Cause of Actual Injury to Defendant**

The third and final element of a UDTPA claim is proximate cause of an actual injury. It appears that plaintiffs have sufficiently alleged proximate cause. Plaintiffs have alleged that after the State of North Carolina notified CSX about the second round of herbicide damage in 2004, Complaint, at ¶ 41, CSX's alleged agent, Defendant Asplundh, detected on the plaintiffs' property herbicides that it had sprayed, Id., at ¶ ¶ 42-43, and that Asplundh admitted to plaintiff that such damage was caused by herbicides it had sprayed as CSX's agent in 2004. Id., at ¶ ¶ 45-47. Such allegations are sufficient at this stage of the litigation.

**IV. The Consumer Oriented Purpose of the UDTPA**

CSX has also argued that even if all the elements have been pled, this is not the type of claim the UDTPA was intended to sanction inasmuch as such claim has nothing to do with consumers. As the case law has developed, it appears that courts have held that "[t]he Act was intended to benefit consumers, but its protections extend to businesses in appropriate situations." Dalton v. Camp, 353 N.C. 647, 656 (2001). The Court of Appeals for the Fourth Circuit has held that the UDTPA can be used where there exists a "business relationship that can be policed for the benefit of the consuming public." Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 520 (4th Cir. 2000).

Without doubt, the relationship between a railroad and an adjoining commercial enterprise engaged in agricultural production is precisely the type of relationship that can be policed for the benefit of the consuming public, and the court need not look far for an example. Clearly, the court can take judicial notice that the use of pesticides and herbicides is a matter of public concern in that consumers now take a keen interest in the chemicals used in producing crops, food, and other products they purchase for consumption as well as the ornamental plants they buy from a nursery and place in and around their homes. It is very

frustrating to a consumer to purchase a plant, perform the digging in the earth necessary to make a proper planting and then to watch the plant begin to turn brown. That consumer will no longer be a customer of a nursery. Further, the consuming public has an abiding interest in the success of commercial agriculture, which can be hampered by the unlawful use of herbicides, in that greater productively and efficiency supposedly lowers prices. Finding that this relationship can be policed for the benefit of the consuming public, Food Lion, supra, the undersigned will recommend that dismissal of such claim also be denied on this basis.

V.      **Conclusion**

Having carefully considered the arguments of respective counsel, and reviewed cases cited therein and compared such to the allegations of the Complaint, the undersigned finds that plaintiffs have adequately stated a claim for relief under the UDTPA in their Ninth Cause of Action. The undersigned will, therefore, respectfully recommend to the district court that CSX's Motion to Dismiss be denied.

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant CSX Transportation, Inc.'s Motion to Dismiss (#12) be **DENIED.**

Signed: May 16, 2006

Dennis L. Howell
United States Magistrate Judge

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).